Dylan M. McFarland
W. Adam Duerk
MCFARLAND MOLLOY LACNY & DUERK
283 W. Front Street, Suite 203
Missoula, Montana 59802
Telephone:  (406) 519-3122
Facsimile:   (406) 519-3123
McFarland@MissoulaLawyers.com
Duerk@MissoulaLawyers.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| RAYMOND WOLF, | CV 24-190-BMM |
|---|---|
| Plaintiff, | **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| vs. | |
| AUSTIN MUTUAL INSURANCE COMPANY and DOE CORPORATIONS 1-5, | |
| Defendants. | |

COMES NOW Plaintiff, Raymond Wolf ("Mr. Wolf"), and for his claim against Austin Mutual Insurance Company ("Austin Mutual"), states and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      Mr. Wolf asserts his claim of Breach of Contract and First-Party Insurance Bad Faith action for Austin Mutual's failure to comply with the terms set

1

forth in an underinsured automobile insurance policy issued to Wolf Constructors Inc. ("Wolf Contractors"), by Defendant Austin Mutual and Austin Mutual's. Mr. Wolf is a named insured on the policy and Austin Mutual has summarily failed to comply with its obligations and responsibilities as an insurer both under the insurance contract and Montana law.

## Parties

2.      Mr. Wolf is currently and was at all times relevant to the allegations contained within their Complaint, a resident and citizen of Gallatin County, Montana.

3.      Austin Mutual, an insurer authorized to do business in Montana, is organized and incorporated in Minnesota, with its principal office located in Maple Grove, Minnesota.

4.      Austin Mutual is a proper party because it has contracted to insure Montana residents, specifically Mr. Wolf and his company, Wolf Contractors, Inc., and has unreasonably denied claims by Mr. Wolf under the policy.

5.      Defendant Doe Corporations 1-5 are other entities that may also be liable for the injuries and damages alleged herein.

## Jurisdiction and Venue

6.      Plaintiff incorporates the foregoing allegations as fully restated herein.

7.    This Court has jurisdiction over this case pursuant to Montana Code Annotated § 3-5-302 and Montana Rule of Civil Procedure 4(b).

8.    Venue is appropriate in this judicial district pursuant to Montana Code Annotated §§ 25-2-121 and 25-2-122.

## ALLEGATIONS COMMON TO ALL COUNTS

9.    Plaintiff incorporates the foregoing allegations as fully restated herein.

10.    Wolf Constructors purchased Commercial Auto Policy Number B1J8265B ("the Policy") from its agent at Gallatin Insurance Agency.  The effective dates of the Policy were April 19, 2022, to April 19, 2023.  A true and correct copy of the Policy is attached hereto as **Exhibit A**.  Wolf Constructors maintained commercial auto insurance with Austin Mutual for years prior to the vehicle accident which precipitated the filing of this Complaint.

11.    The vehicle involved in the underlying collision was a vehicle covered by the Policy.

12.    Mr. Wolf was occupying the vehicle involved in the underlying collision at the time of the underlying accident.

13.    Mr. Wolf was an insured under the terms of the Policy.

14.    On December 6, 2022, Mr. Wolf was rear-ended by Courtnie Lemirande ("Ms. Lemirande"), an unlicensed driver, while on the road outside of his residence.

15.     The impact of the collision caused debilitating damage to Mr. Wolf's work truck and the truck was undrivable.

16.     The collision caused serious injury to Mr. Wolf's neck, back, spine, knee,  and lower extremities.

17.     Liability concerning the collision between Mr. Wolf and Ms. Lemirande has never been contested and is not in dispute.

18.     Ms. Lemirande's insurer, Progressive Casualty Insurance Company, voluntarily advanced paid medicals and lost income.

19.     Progressive Casualty Insurance Company paid the full $25,000.00 limits of Ms. Lemirande's bodily injury policy shortly after the collision.

20.     Austin Mutual made payments under both *Ridley* and *DuBray* following Mr. Wolf's request to do the same.

21.     Austin Mutual did not contest the request for payments and did not seek an Independent Medical Evaluation prior to fully accepting payments under *Ridley* and *Dubray.*

22.     Austin Mutual summarily denied any future medical or lost wage payments under either *Ridley* or *Dubray* and did so based solely on the opinion of an insurance adjuster, without any medical training, any medical records review, or any evaluation by an Independent Medical Examiner.

**Pertinent Policy Provisions**

23.    The Policy provides the following coverage for Montana underinsured

motorists coverage:

**MONTANA UNDERINSURED MOTORISTS
COVERAGE – NONSTACKED**

.    .    .

**A. Coverage**

1.  We will pay all sums the "insured" is legally entitled to recover
    as compensatory damages from the owner or driver of an
    "underinsured motor vehicle". The damages must result from
    "bodily injury" sustained by the "insured" caused by an
    "accident". The owner's or driver's liability for these damages
    must result from the ownership, maintenance or use of the
    "underinsured motor vehicle".

2.  We will pay under this coverage only if Paragraph a. or b. below
    applies:

    a.  The limit of any applicable liability bonds or policies has been
        exhausted by payment of judgments or settlements;

    .    .    .

**B. Who Is An Insured**

.    .    .

2.  A partnership, limited liability company, corporation or any
    other form of organization, then the following are "insureds":

    a.  Anyone "occupying" a covered "auto" or a temporary
        substitute for a covered "auto". The covered "auto" must be
        out of service because of its breakdown, repair, servicing,
        "loss" or destruction.

Ex. A at 42:  MT UIM Coverage – Nonstacked.

24.    The Schedule page shows the Policy provides $1,000,000 in the limits of coverage for the Montana underinsured motorists coverage.  Ex. A at 17.

## Coverage Representations and Denial

25.    On November 9, 2023, Mr. Wolf put Austin Mutual on notice of the damage and made a claim for coverage under the Policy to pay for his medical treatment and lost wages.

26.    Mr. Wolf timely provided notice of his first-party claim under the Policy to Austin Mutual.

27.    On December 29, 2023, Austin Mutual made an advance payment of $80,281.78 under the Policy for Mr. Wolf's medical bills and lost wages.  Austin Mutual did not contest any claims for the advanced payment of either Mr. Wolf's claimed medicals or lost income.

28.    The advanced payments from Austin Mutual did not cover the total cost of treatment for Mr. Wolf's bodily injury and lost wages which resulted from the collision with Ms. Lemirande.

29.    On July 3, 2024, Mr. Wolf sent an additional demand letter to Austin Mutual, demanding that Austin Mutual honor the coverage granted under the Policy, and submit additional payments to Mr. Wolf to cover the cost of medical care and lost wages resulting from his injuries.

30.     Mr. Wolf's July 3, 2024 demand contained detailed documentation of the treatment he received as result of the collision with Courtnie Lemirande.

31.     Mr. Wolf's July 3, 2024 demand contained detailed documentation of his lost wages that resulted from the collision with Courtnie Lemirande.

32.     On July 24, 2024, Austin Mutual responded to Mr. Wolf's demand for coverage.

33.     In its July 24, 2024 response, without any medical support and on its third insurance adjuster, Austin Mutual stated for the first time that it:

> . . . questioned the mechanism of injury given that there was minor rear bumper scuffing and a broken taillight to your client's vehicle. Additionally, your client has extensive prior degenerative conditions that were not caused by the accident.

34.     Also, in its July 24, 2024 response, Austin Mutual offered an additional $20,000.00 for a full and final settlement of Mr. Wolf's Underinsured Motorist claim.

35.     The amount offered by Austin Mutual was insufficient to cover even the remainder of the costs and lost wages claimed by Mr. Wolf arising from the collision with Courtnie Lemirande.

36.     Austin Mutual stopped making payments to Mr. Wolf, based on its company's independent review, and not based on any professional opinion.

37.     Austin Mutual has unreasonably denied Mr. Wolf's injuries and lost wages covered under the Policy.  Austin Mutual has likewise failed to appropriately adjust Mr. Wolf's claims in a reasonable, fair, or prompt manner.

38.     Mr. Wolf continues to incur lost wages and medical bills reasonably and related to the collision.

## COUNT I – BREACH OF CONTRACT

39.     Plaintiff incorporates the foregoing allegations as if fully restated herein.

40.     Because Mr. Wolf's injury and lost wages claims fall within the grant of coverage under the Policy, and no exclusions apply, Austin Mutual has an obligation to pay Mr. Wolf's injury and lost wage claims.

41.     Austin Mutual breached its contract when it failed to indemnify Mr. Wolf for his covered damages under the Policy.

42.     Austin Mutual's breach of contract caused damages to the Mr. Wolf. As a result of Austin Mutual's unreasonable actions, Mr. Wolf has suffered damages, including loss of income, medical expenses, attorney fees, interest, and litigation costs.

## COUNT II – BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

43.     Plaintiff incorporates the foregoing allegations as if fully restated herein.

44.     Austin Mutual had a duty of good faith and fair dealing towards Mr. Wolf.

45.     Austin Mutual breached its duty of good faith and fair dealing by wrongfully refusing to pay Mr. Wolf benefits for which he had purchased and obtained under the Policy.

46.     Austin Mutual's breach of its duty of good faith and fair dealing toward Mr. Wolf caused him significant damage including, but not limited to medical expenses, lost wages, attorney fees, interests, and litigation costs.

## COUNT III – DECLARATORY RELIEF

47.     Plaintiff incorporates the foregoing allegations as if fully restated herein.

48.     On November 9, 2023, Mr. Wolf, through counsel, formally requested advanced payments of medical expenses pursuant to *Ridley v. Guaranty National Insurance Company*, 286 Mont. 325, 334, 951 P.2d 987, 992 (1997), in the amount of $49,177.78.

49.     The medical treatment for which Mr. Wolf sought payment through his own insurer, Austin Mutual, included treatment from a chiropractor, physical therapist, neurologist (injections to knee, thoracic and cervical spine), orthopedic surgeon (meniscus), and neurosurgeon (cervical fusion C4-C7).

50.     On November 9, 2023, Mr. Wolf, through counsel, formally requested advanced payments of lost income pursuant to *Dubray v. Farmers Insurance Exchange*, 2001 MT 251, ¶¶ 13-15, 307 Mont. 134, 137-138, 36 P.3d 897, 899-900, in an amount of $1,273.00 per week, which had accrued to $61,104.00, at the time of the demand.

51.     As included in the demand for advanced payment of lost income, Mr. Wolf indicated he had been out of work since December 6, 2022.  He has not been cleared to return to work.

52.     On December 29, 2023, Austin Mutual paid Mr. Wolf's demands under both *Ridley* and *Dubray* in full (less the amount from his medical payments coverage, and the amount paid by the underlying insurer) and without exception.

53.     On December 29, 2023, Austin Mutual did not contest any of the medical treatment as either being related to or necessary as a result of the December 6, 2022, collision.

54.     Mr. Wolf requested that Austin Mutual pay the remainder of the medical bills related to his cervical fusion.  In response, Austin Mutual asked for the supporting medical records for other aspects of the cervical fusion, which were provided to Austin Mutual on May 17, 2024.  Austin Mutual did not ask for any additional records.

55.    Over the next few months, the claim moved between various adjusters.

56.    On July 3, 2024, Mr. Wolf again made demands under *Ridley* for $138,545.78 which were related to the cervical fusion which Austin Mutual had already previously accepted and *Dubray*, for $33,674.40, which represented his lost income for the time he remained off of work.

57.    On July 24, 2024, Austin Mutual responded to the demand and did not accept payment of any of Mr. Wolf's demands for the advanced payment of medicals or lost income as, for the first time, it questioned the mechanism of injury and referenced prior degenerative conditions of Mr. Wolf.

58.    Austin Mutual did not provide any medical report, records review, or opinion to support its change in position regarding Mr. Wolf's cervical fusion.

59.    Austin Mutual did not ask that Mr. Wolf undergo any evaluation to resolve the newly formed objections to payments related to his cervical fusion or the time missed in treating that condition.

60.    Rather than forward any advanced payments, Austin Mutual offered to settle Mr. Wolf's claim as a whole for $20,000.00.

61.    Mr. Wolf is entitled to declaratory judgment that Austin Mutual is not allowed to summarily discontinue the advanced payments of medical treatment or lost income without any medical support.

62.     Mr. Wolf is entitled to damages for Austin Mutual's failure to make advanced payments as required by law, including but not limited to lost income, medical expenses, interest, and attorney fees.

## COUNT IV – BAD FAITH

63.     Plaintiff incorporates the foregoing allegations as if fully restated herein.

64.     Austin Mutual unreasonably violated Montana Code Annotated §§ 33-18-201 and 242 when it denied coverage under the Policy and failed to indemnify Plaintiff.

65.     Austin Mutual's failure constitutes an unreasonable violation of Montana Code Annotated § 33-18-201(1), (4), (6) and (13).

66.     During the course of the handling of Mr. Wolf's claim, Austin Mutual has:

    a.    Misrepresented pertinent facts or insurance policy provisions relating to coverage at issue;

    b.    Refused to pay Mr. Wolf's claim without conducting a reasonable investigation based upon all available information;

    c.    Neglected to attempt in good faith to effectuate a prompt, fair and equitable settlement of Mr. Wolf's claims when liability was reasonably clear;

    d.    Compelled Mr. Wolf to engage in litigation to obtain answers to reasonable questions/clarifications regarding Austin Mutual's position on the scope of coverage and applicable limits under the Policy, if coverage is available; and

e. Failed to promptly settle claims, where liability is reasonably clear, under one portion of the insurance policy coverage in order to influence settlement under other portions of the policy.

67. Austin Mutual's bad faith has caused damages to Mr. Wolf, including but not limited to emotional distress damages, attorney fees, costs of litigation, and interest for refusing to make advanced payments of medical expenses and lost wages.

<u>**COUNT V – PUNITIVE DAMAGES**</u>

68. Plaintiff incorporates all preceding allegations as if fully set forth herein.

69. Austin Mutual denied Mr. Wolf any advanced payments for both his reasonable, necessary, and related medical treatment and more importantly, his lost income.

70. Austin Mutual knew that Mr. Wolf was not working as a result of the incident and subsequent medical treatment and care.

71. Mr. Wolf was the primary source of income for his family at the time of his injury and his inability to work caused significant financial distress for Mr. Wolf and his family.

72. Because Austin Mutual denied the advanced payment of lost income after November 9, 2023, Mr. Wolf was required to sell personal property, assets, collectables, and the tools and equipment from his construction company to survive.

73.    Mr. Wolf's sale of the tools and equipment from his construction company was particularly difficult as it stripped his ability to ever go back to the work he had performed over 30 years, to use the equipment and tools to allow others to perform the work under his supervision or direction, or to pass the business to his son, which was also a consideration prior to his need to sell the equipment and tools he had accumulated over his work-life.

74.    Austin Mutual arbitrarily determined that November 9, 2023, was the date that Mr. Wolf should no longer receive any advanced payment of lost income as a result of this incident.

75.    Austin Mutual paid Mr. Wolf's advanced payment in full prior to November 9, 2023, under Dubray, as liability and his missed work was related to the incident.  Austin Mutual did not dispute that at any point prior to July 24, 2024.

76.    Upon information and belief, Austin Mutual discontinued the advanced payment of lost income, not based on any medial review or opinion, but rather on an adjuster's arbitrary decision not to pay.

77.    Austin Mutual has never provided any explanation or basis for terminating the advanced payment of lost income on November 9, 2023.

78.    Rather than making the advanced payments as it had previously done and is required, Austin Mutual instead attempted to leverage the withholding of

previously paid advanced payments to settle Mr. Wolf's case for the significantly undervalued amount of $20,000.00.

79.     Austin Mutual had knowledge of the fact that Mr. Wolf was out of work and experiencing financial distress or intentionally disregarded that fact and the discontinuation of advanced payment of lost income created a high probability of injury to Mr. Wolf.

80.     Austin Mutual had knowledge of the fact that Mr. Wolf's injuries were not "preexisting conditions" but new injuries based upon the medical records provide to it, yet Austin Mutual intentionally disregarded the facts, discontinued the of advanced payment of lost income, and made an unreasonable and unsupported offer to settle his claim, which created a high probability of financial injury to Mr. Wolf.

81.     Austin Mutual's decision to discontinue the advanced payment of lost income and to attempt to leverage a settlement for the fractional value of Mr. Wolf's damages and value of the case, knowing he was in financial distress.  This is indicative of Austin Mutual proceeding with indifference to the high probability of injury to Mr. Wolf.

82.     Defendant's actions constitute actual malice under Mont. Code Ann. § 27-1-221(2) and Mr. Wolf is entitled to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

1.      For all general damages, including emotional distress damages;

2.      All special damages, including but not limited to past and future medical expenses and past and future lost income;

3.      Punitive damages in amounts to be proven at trial pursuant to Mont. Code Ann. § 27-1-221;

4.      Court costs and attorney fees as afforded by Montana's Declaratory Judgment Act, Montana Code Annotated 27-1-101 et seq.;

5.      Pre-judgment and post-judgment interest; and

6.      Any other relief allowable by law that this Court deems just and proper.

DATED this 12th day of May, 2025.

MCFARLAND MOLLOY LACNY & DUERK

*/s/ Dylan M. McFarland*
Dylan M. McFarland
*Attorney for Plaintiff*

16

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

DATED this 12th day of May, 2025.

MCFARLAND MOLLOY LACNY & DUERK

*/s/ Dylan M. McFarland*
Dylan M. McFarland
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on May 12, 2025, the foregoing document was served via CM/ECF on all counsel of record in the case.

*/s/ Dylan M. McFarland*
Dylan M. McFarland

# Exhibit A

Main Street America Insurance
55 West Street
Keene, NH  03431

⟵ Return Mail Address

```
GALLATIN INSURANCE AGENCY                    AGENT NUMBER: 251016
200 W MADISON AVE
BELGRADE MT 59714


---
```

**Wolf 0001**

Main Street America Insurance
55 West Street
Keene, NH  03431

← Return Mail Address

```
WOLF CONSTRUCTORS INC
PO BOX 11118
BOZEMAN MT 59719-1118
```

---

INSURED COPY

**Wolf 0002**

# POLICYWRITING INDEX

AUSTIN MUTUAL INSURANCE COMPANY

| INSURED ID | POLICY NUMBER | PREVIOUS POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|---|---|
| 1928510 | B1J8265B | B1J8265B | 04-19-2022 | 04-19-2023 |

NAMED INSURED    WOLF CONSTRUCTORS INC

| MISCELLANEOUS INFORMATION | | TRANSACTION INFORMATION | |
|---|---|---|---|
| BILL TYPE | DIRECT | TRANS. TYPE | RENEWAL ISSUE |
| BILL PLAN | | TRANS. SEQ. # | 001 |
| OPERATOR I.D. | PDADMIN | DATE PROCESSED | 02-24-2022 |
| U/W I.D. | | TRANS. DATE | 04-19-22 |
| PROGRAM CODE | | ENDORSEMENT # | |
| SIC CODE | | CANC/REIN REASON | |
| OFFICE CODE | | | |
| OFFICE NAME | | | |
| WORK PHONE # | | | |
| OTHER PHONE # | | | |
| NAME OF CONTACT | | | |

LINE OF BUSINESS/ COMMISSIONS:

| LINE OF BUSINESS | COMMISSION % |
|---|---|
| AUTOMOBILE | |

FULL ANNUAL PREMIUM    $ ██████
BILLED PREMIUM    $ ██████

| NAMED INSURED MAILING ADDRESS | AGENT INFORMATION          CODE   251016 |
|---|---|
| WOLF CONSTRUCTORS INC | GALLATIN INSURANCE AGENCY |
| | 200 W MADISON AVE |
| ████████ | |
| BOZEMAN              MT     59719-1118 | BELGRADE              MT     59714 |

## ASSEMBLY INFORMATION

### STAMPS/ STICKERS

### SPECIAL INSTRUCTIONS

### MAILING INSTRUCTIONS

INSURED COPY

**Wolf 0003**

## POLICYWRITING INDEX

| INSURED ID | POLICY NUMBER | PREVIOUS POLICY NUMBER | EFFECTIVE DATE - EXPIRATION DATE | |
|---|---|---|---|---|
| 1928510 | B1J8265B | B1J8265B | 04-19-2022 | 04-19-2023 |

COMPUTER PRODUCED FORMS

```
CO-DEC                     01-97 COMMON POLICY DECLARATIONS
64-5960                    10-06 PRIVACY NOTICE
IL 00 17                   11-98 COMMON POLICY CONDITIONS
IL 00 21                   09-08 NUCLEAR ENERGY LIABILITY EXCLUSION ENDT
IL 01 67                   10-13 MONTANA CHANGES-CONFORMITY WITH STATUTES
FORM-SCHED                 01-97 SCHEDULE OF FORMS AND ENDORSEMENTS
60-K307                    09-21 AMIC PARTICIPATION SIGNATURE CLAUSE
64-K484                    01-15 VEHICLE SHARING EXCLUSION ENDORSEMENT
AU-DEC C/W                 03-06 BUSINESS AUTO COVERAGE FORM DECLARATIONS
AU-DEC C/W CONTINUED       03-06 BUSINESS AUTO COVERAGE FORM DECLARATIONS
AU-DEC C/W CONTINUED       03-06 SCHEDULE OF COVERED AUTOS YOU OWN
CA 02 20                   10-13 MT CHANGES-CANCELLATION & NONRENEWAL
CA 00 01                   10-13 BUSINESS AUTO COVERAGE FORM
CA 23 84                   10-13 EXCLUSION OF TERRORISM
CA 23 85                   10-13 EXCL OF TERRORISM INVOLVING NUC/BIO/CHEM
CA 99 23                   10-13 RENTAL REIMBURSEMENT COVERAGE
CA 31 33                   06-17 MT UIM COVERAGE - NONSTACKED
CA 31 35                   06-17 MT UNINSURED COVERAGE - NONSTACKED
CA 01 72                   10-13 MT CHANGES - AUTO MED PAY COVERAGE
CA 99 03                   10-13 AUTO MEDICAL PAYMENTS COVERAGE
```

**Wolf 0004**

**MONTANA INSURANCE IDENTIFICATION CARD**

COMPANY NUMBER   COMPANY    ☑ COMMERCIAL   ☐ PERSONAL

009        AUSTIN MUTUAL INSURANCE COMPANY

POLICY NUMBER         EFFECTIVE DATE   EXPIRATION DATE

B1J8265B          04-19-2022   04-19-2023

YEAR   MAKE/MODEL             VEHICLE IDENTIFICATION NUMBER

2015 TOYOTA TACOMA 4X4      ██████████6389

AGENCY/COMPANY ISSUING CARD
GALLATIN INSURANCE AGENCY
200 W MADISON AVE
BELGRADE, MT 59714

INSURED

   WOLF CONSTRUCTORS INC
   ████████
   BOZEMAN, MT 59719-1118

SEE IMPORTANT NOTICE ON REVERSE SIDE

---

**THIS CARD MUST BE KEPT IN THE INSURED
VEHICLE AND PRESENTED UPON DEMAND**

IN CASE OF ACCIDENT: Report all accidents to your Agent/Company as soon as possible. Obtain the following information:

1. Name and address of each driver, passenger and witness.

2. Name of Insurance Company and policy number for each vehicle involved.

Contact Austin Mutual Claims Reporting at 1-877-425-2467

ACORD 50 (2007/02)       © ACORD CORPORATION 1983-2007. All rights reserved.

INSURED COPY

**Wolf 0005**

**MONTANA INSURANCE IDENTIFICATION CARD**

| COMPANY NUMBER | COMPANY | ☑ COMMERCIAL | ☐ PERSONAL |
|---|---|---|---|
| 009 | AUSTIN MUTUAL INSURANCE COMPANY | | |

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| B1J8265B | 04-19-2022 | 04-19-2023 |

YEAR    MAKE/MODEL                                        VEHICLE IDENTIFICATION NUMBER

2015  TOYOTA TACOMA 4X4                              ██████████6389

AGENCY/COMPANY ISSUING CARD
GALLATIN INSURANCE AGENCY
200 W MADISON AVE
BELGRADE, MT 59714

INSURED

WOLF CONSTRUCTORS INC
████████
BOZEMAN, MT 59719-1118

SEE IMPORTANT NOTICE ON REVERSE SIDE

INSURED COPY

**Wolf 0006**

THIS CARD MUST BE KEPT IN THE INSURED
VEHICLE AND PRESENTED UPON DEMAND

IN CASE OF ACCIDENT: Report all accidents to your Agent / Company as
soon as possible. Obtain the following information:

1. Name and address of each driver, passenger and witness.

2. Name of Insurance Company and policy number for each
   vehicle involved.

Contact Austin Mutual Claims Reporting at 1-877-425-2467

**ACORD 50 (2007/02)**                    © **ACORD CORPORATION 1983-2007.  All rights reserved.**

INSURED COPY

**Wolf 0007**



**MAIN STREET AMERICA** INSURANCE

**Policy Number**
**B1J8265B**

**COMMON POLICY DECLARATIONS**

**RENEWAL OF:**
B1J8265B

## AUSTIN MUTUAL INSURANCE COMPANY

PO BOX 2300 KEENE, NH 03431

RENEWAL
**Date Issued:** 02-24-2022
**Effective Date:** 04-19-22

| Item 1. | Named Insured and Mailing Address | Agent Name and Address |
|---|---|---|
| | WOLF CONSTRUCTORS INC <br> ▇▇▇▇▇▇▇ <br> BOZEMAN MT 59719-1118 | GALLATIN INSURANCE AGENCY <br><br> 200 W MADISON AVE <br> BELGRADE, MT 59714 <br><br> Agent Phone No. (406)388-7211 <br> Agent No.    251016 |

| Item 2. | Policy Period | From:  04-19-2022 To:  04-19-2023 |
|---|---|---|
| | | **at 12:01 A.M., Standard Time at your mailing address shown above.** |

| Item 3. | Business Description: DRYWALL OR WALLBOARD INSTALLATION <br> Form of Business:    CORPORATION |
|---|---|

| Item 4. | In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. |
|---|---|

This policy consists of the following coverage parts for which a premium is indicated.  Where no premium is shown, there is no coverage.  This premium may be subject to adjustment.

| Coverage Part(s) | Premium |
|---|---|
| Commercial Property Coverage Part | NOT COVERED |
| Commercial General Liability Coverage Part | NOT COVERED |
| Commercial Crime Coverage Part | NOT COVERED |
| Commercial Inland Marine Coverage Part | NOT COVERED |
| Commercial Auto (Business or Truckers) Coverage Part | $    ▇▇▇▇▇▇ |
| Commercial Garage Coverage Part | NOT COVERED |
| | |
| | |
| | |
| | |
| Total Policy Premium | $    ▇▇▇▇▇▇ |

| Item 5. | Forms and Endorsements |
|---|---|

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

Countersigned:

Date: _____    By: _____

Authorized Representative

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

**CO-DEC (01/97)**

INSURED COPY

**Wolf 0008**

**NGM Insurance Company**
**Old Dominion Insurance Company**
**Main Street America Assurance Company**
**MSA Insurance Company**
**Grain Dealers Mutual Insurance Company**
**Great Lakes Casualty Insurance Company**
**Spring Valley Mutual Insurance Company**
**Austin Mutual Insurance Company**
**Main Street America Protection Insurance Company**

## PRIVACY NOTICE

As your insurer, our objective is to professionally serve your insurance needs. We recognize that in providing these services, we have an obligation to safeguard the personal information you entrust to us as well as other information we may collect as part of the insurance transaction.

This notice describes the privacy practices and standards we adopted to protect and ensure the confidentiality of your non-public personal information. All of our insurance companies listed above adhere to these practices and standards.

## OUR POLICY

**We do not disclose any non-public personal information about our policyholders or claimants to any third parties except as permitted by law. Any such disclosures are made for the purpose of underwriting and transacting the business of your insurance coverage or your claim. We do not sell or provide your non-public personal information to others for their marketing purposes.**

### *THE INFORMATION WE COLLECT*

We do not disclose any non-public information about you or about participants or claimants under your insurance policy to anyone, except as permitted by law, nor do we sell customer or policyholder information to mailing lists companies or mass marketing companies. We may share information about you or about participants or claimants under your insurance policy in the normal business of conducting insurance operations, such as with your agent or broker; appraisers and independent adjusters who investigate, defend or settle your claims; insurance regulators; and your mortgage lender or lienholder.

### *THE INFORMATION WE DISCLOSE*

We do not disclose any non-public information about you or about participants or claimants under your insurance policy to anyone, except as permitted by law, nor do we sell customer or policyholder information to mailing list companies or mass marketing companies. We may share information about you or about participants or claimants under your insurance policy in the normal business of conducting insurance operations, such as with your agent or broker; appraisers and independent adjusters who investigate, defend or settle your claims; insurance regulators; and your mortgage lender or lienholder.

### *HOW WE PROTECT YOUR PERSONAL INFORMATION*

We restrict access to non-public personal information about you or about participants and claimants under your insurance policy to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with state and federal regulations to guard your non-public personal information. Our computer systems are also protected by additional measures intended to prevent unauthorized access.

### *ADDITIONAL INFORMATION*

If you would like to receive a copy of our privacy policy please contact us as follows:

> Main Street America Group
> ATT: Privacy Compliance Coordinator
> 55 West Street
> Keene, NH 03431

These privacy practices and standards have been put into place to protect your personal information. You will receive a reaffirmation of our privacy practices annually.

**64-5960 (10/06)**

INSURED COPY

**Wolf 0009**

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98         Copyright, Insurance Services Office, Inc., 1998         Page 1 of 1     ☐

INSURED COPY

Wolf 0010

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

☐

INSURED COPY

**Wolf 0011**

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

  **(a)** Any "nuclear reactor";

  **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

  **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

  **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

    © ISO Properties, Inc., 2007    **IL 00 21 09 08**    □

INSURED COPY

**Wolf 0012**

IL 01 67 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MONTANA CHANGES – CONFORMITY WITH STATUTES

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

**A.** The following condition is added:

Conformity with Montana statutes. The provisions of this policy or Coverage Part conform to the minimum requirements of Montana law and control over any conflicting statutes of any state in which you reside on or after the effective date of this policy or Coverage Part.

However, with respect to insurance provided under the Commercial Automobile Coverage Part, while a covered "auto" is away from Montana:

**1.** We will increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**2.** We will provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

**3.** No one will be entitled to duplicate payments for the same elements of loss.

**B.** Any provision of this policy or Coverage Part (including endorsements which modify the policy or Coverage Part) that does not conform to the minimum requirements of a Montana statute is amended to conform to such statute.

IL 01 67 10 13                © Insurance Services Office, Inc., 2013                Page 1 of 1

INSURED COPY

**Wolf 0013**



**Policy Number**
**B1J8265B**

**SCHEDULE OF FORMS AND ENDORSEMENTS**

## AUSTIN MUTUAL INSURANCE COMPANY

| Named Insured | WOLF CONSTRUCTORS INC | Effective Date: | 04-19-22 |
| | | | 12:01 A.M., Standard Time |
| Agent Name | GALLATIN INSURANCE AGENCY | Agent No. | 251016 |

COMMON POLICY FORMS AND ENDORSEMENTS

```
 CO-DEC               01-97    COMMON POLICY DECLARATIONS
 64-5960              10-06    PRIVACY NOTICE
*IL 00 17             11-98    COMMON POLICY CONDITIONS
*IL 00 21             09-08    NUCLEAR ENERGY LIABILITY EXCLUSION ENDT
*IL 01 67             10-13    MONTANA CHANGES-CONFORMITY WITH STATUTES
 FORM-SCHED           01-97    SCHEDULE OF FORMS AND ENDORSEMENTS
 60-K307              09-21    AMIC PARTICIPATION SIGNATURE CLAUSE
```

AUTOMOBILE FORMS AND ENDORSEMENTS

```
*64-K484              01-15    VEHICLE SHARING EXCLUSION ENDORSEMENT
 AU-DEC C/W           03-06    BUSINESS AUTO COVERAGE FORM DECLARATIONS
 AU-DEC C/W CONTINUED 03-06    BUSINESS AUTO COVERAGE FORM DECLARATIONS
 AU-DEC C/W CONTINUED 03-06    SCHEDULE OF COVERED AUTOS YOU OWN
*CA 02 20             10-13    MT CHANGES-CANCELLATION & NONRENEWAL
*CA 00 01             10-13    BUSINESS AUTO COVERAGE FORM
*CA 23 84             10-13    EXCLUSION OF TERRORISM
*CA 23 85             10-13    EXCL OF TERRORISM INVOLVING NUC/BIO/CHEM
 CA 99 23             10-13    RENTAL REIMBURSEMENT COVERAGE
*CA 31 33             06-17    MT UIM COVERAGE - NONSTACKED
*CA 31 35             06-17    MT UNINSURED COVERAGE - NONSTACKED
*CA 01 72             10-13    MT CHANGES - AUTO MED PAY COVERAGE
*CA 99 03             10-13    AUTO MEDICAL PAYMENTS COVERAGE
```

* THESE FORMS ARE PART OF THIS POLICY BUT ARE NOT PRINTED

**FORM-SCHED (01/97)**

INSURED COPY

PO Box 2300
Keene, NH 03431
(800) 207-0457

**MUTUAL COMPANY PARTICIPATING NON-ASSESSABLE POLICY**

**MUTUALS – MEMBERSHIP AND VOTING NOTICE:**
The insured is notified that by virtue of this policy, he is a member of the Austin Mutual Insurance Company of Maple Grove, Minnesota, and is entitled to vote either in person or by proxy at any and all meetings of said Company.  The Annual meetings are held in Jacksonville, Florida during the second week of March each year at 10:30 am.

**PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY:**  No Contingent Liability:  This policy is non-assessable. The policyholder is a member of the Company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

In Witness Whereof, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

_____
Kimberly K. Law
Secretary

_____
Jeff Kusch
President

**60-K307 09 21**

INSURED COPY

**Wolf 0015**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VEHICLE SHARING EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following exclusion is added to **Covered Autos Liability Coverage:**

**Vehicle Sharing Programs**

This insurance does not apply to:

**1.** "Bodily injury" arising out of the ownership, maintenance or use of your "auto" while enrolled in a "vehicle sharing program" under the terms of a written agreement and while being used in connection with such "vehicle sharing program".

**2.** "Property damage" arising out of the ownership, maintenance or use of your "auto" while enrolled in a "vehicle sharing program" under the terms of a written agreement and while being used in connection with such "vehicle sharing program".

**B.** The following exclusion is added to **Physical Damage Coverage:**

**Vehicle Sharing Programs**

This insurance does not apply to:

**1.** "Loss" caused by or resulting from the ownership, maintenance or use of your "auto" while enrolled in a "vehicle sharing program" under the terms of a written agreement and while being used in connection with such "vehicle sharing program".

**C. Medical Payments**

If the Medical Payments Endorsement is attached to the policy, the following exclusion is added:

We do not provide Medical Payments Coverage for "Bodily Injury" arising out of the ownership, maintenance or use of your "auto" while enrolled in a "vehicle sharing program" under the terms of a written agreement and while being used in connection with such "vehicle sharing program".

**D.  Uninsured Motorists and Underinsured Motorist Coverage Endorsements**

If the Uninsured Motorists and/or Underinsured Motorists Coverage Endorsements are attached to the policy, the following exclusion is added:

We do not provide Uninsured and/or Underinsured Motorists Coverage for "Bodily Injury" arising out of the ownership, maintenance or use of your "auto" while enrolled in a "vehicle sharing program" under the terms of a written agreement and while being used in connection with such "vehicle sharing program".

**E.  Additional Definitions**

As used in this endorsement:

1. "Vehicle Sharing Program" means the arrangement of the lease, rental or sharing of your "auto" for any type of compensation.

64 K484 01 15

Page 1 of 1

**Wolf 0016**



**Policy Number:** B1J8265B
**Renewal of:**    B1J8265B

# BUSINESS AUTO COVERAGE FORM DECLARATIONS

## AUSTIN MUTUAL INSURANCE COMPANY

PO BOX 2300 KEENE, NH 03431

### ITEM ONE

| Named Insured and Mailing Address | Agent Name and Address |
|---|---|
| WOLF CONSTRUCTORS INC <br><br> BOZEMAN MT 59719-1118 | GALLATIN INSURANCE AGENCY <br><br> 200 W MADISON AVE <br> BELGRADE, MT 59714 <br><br> Agent Phone No. (406)388-7211 <br> Agent No.  251016 |

| Policy Period | From: 04-19-2022 To: 04-19-2023 | 12:01 A.M., Standard Time |
|---|---|---|

### ITEM TWO — SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages | Covered Autos** | Limit<br>The most we will pay for any<br>one accident or loss | Premium |
|---|---|---|---|
| Liability | 2,8,9 | $1,000,000 | $ ▮▮▮▮ |
| Personal Injury Protection*** | | Separately stated in each P.I.P. endorsement<br>minus                                  Ded. | |
| Added Personal Injury Protection**** | | Separately stated in each added P.I.P.<br>endorsement. | |
| Property Protection Insurance (Michigan only) | | Separately stated in the P.P.I. endorsement<br>minus                         Ded. for each<br>accident | |
| Auto Medical Payments | 2 | $       5,000 | $ ▮▮▮▮ |
| Medical Expense and Income Loss Benefits (Virginia only) | | Separately Stated In Each Medical Expense And Income loss Benefit Endorsement | |
| Uninsured Motorists | 2 | $   1,000,000 | $ ▮▮▮▮ |
| Underinsured Motorists (When not included in UM Coverage) | 2 | $   1,000,000 | $ ▮▮▮▮ |
| P H Y S I C A L     D A M A G E  Comprehensive Coverage | 7 | Actual cash value or cost of repair, which-ever is less minus | SEE SCHEDULE ded. for each covered auto, but no deductible applies to loss caused by fire or lightning.***** | $ ▮▮▮▮ |
| Specified Causes of Loss Coverage | | | ded. for each covered auto for loss caused by mischief or vandalism.***** | |
| Collision Coverage | 7 | | SEE SCHEDULE ded. for each covered auto.***** | $ ▮▮▮▮ |
| Towing and Labor | | | for each disablement of a private passenger "auto". | |

| Forms and Endorsements applying to this coverage part and made a part of this policy at time of issue:<br>**SEE SCHEDULE OF FORMS AND ENDORSEMENTS** | Tax/Surcharge/Fee | |
|---|---|---|
| | Premium for Endorsements | $ ▮▮▮▮ |
| | *Estimated Total Premium | $ ▮▮▮▮ |

| * | This policy may be subject to final audit. |
|---|---|

\*\*      Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos.
\*\*\*      Or equivalent No-Fault Coverage
\*\*\*\*    Or equivalent added No-Fault Coverage
\*\*\*\*\*  See ITEM FOUR for Hired or Borrowed "Autos".

This policy declaration and the supplemental declaration(s), together with the common policy conditions, coverage parts, coverage form(s) and forms and endorsements, if any, complete the above numbered policy.

**Wolf 0017**

Policy Number:  **B1J8265B**                                                    **BUSINESS AUTO DECLARATIONS (Continued)**

**ITEM THREE – SCHEDULE OF COVERED AUTOS YOU OWN**

### SEE SCHEDULE OF COVERED AUTOS YOU OWN

**ITEM FOUR – SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS**

| | | LIABILITY COVERAGE – RATING BASIS, COST OF HIRE | | |
|---|---|---|---|---|
| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | FACTOR (If Liability Coverage Is Primary) | PREMIUM |
| MT | IF ANY | $ ▮▮▮ | 6.000 | $ ▮▮▮▮▮ |
| | | | TOTAL PREMIUM | $ ▮▮▮▮▮ |

| | | LIABILITY COVERAGE – RATING BASIS, NUMBER OF DAYS – (FOR MOBILE OR FARM EQUIPMENT) – RENTAL PERIOD BASIS | | |
|---|---|---|---|---|
| STATE | ESTIMATED NUMBER OF DAYS EQUIPMENT WILL BE RENTED | BASE PREMIUM | FACTOR | PREMIUM |
| | | | | |
| | | | TOTAL PREMIUM | |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

**PHYSICAL DAMAGE COVERAGE**

| COVERAGES | LIMIT OF INSURANCE | ESTIMATED ANNUAL COST OF HIRE | RATE PER EACH $100 ANNUAL COST OF HIRE | PREMIUM |
|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | | | |
| SPECIFIED CAUSES OF LOSS | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. | | | |
| COLLISION | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO. | | | |
| | | | TOTAL PREMIUM | |

**ITEM FIVE – SCHEDULE FOR NON-OWNERSHIP LIABILITY**

| NAMED INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM |
|---|---|---|---|
| Other Than Garage Service Operations And Other than Social Service Agencies | Number Of Employees | 1 | 134 |
| | Number Of Partners | | |
| Garage Service Operations | Number of Employees Whose Principal Duty Involves The Operation of Autos | | |
| Social Service Agencies | Number Of Employees | | |
| | Number Of Volunteers | | |
| | TOTAL | | 134 |

INSURED COPY

**Wolf 0018**

**Policy Number**
**B1J8265B**

### SCHEDULE OF COVERED AUTOS YOU OWN

## AUSTIN MUTUAL INSURANCE COMPANY

Named Insured    WOLF CONSTRUCTORS INC      Effective Date: 04-19-22

12:01 A.M., Standard Time

Agent Name      GALLATIN INSURANCE AGENCY      Agent No.   251016

---

### ITEM THREE — SCHEDULE OF COVERED AUTOS YOU OWN

| Covered Auto No. | Description — Year, Model, Trade Name, Body Type, Serial Number(s), Vehicle Identification Number (VIN) | Except for towing, all physical damage loss is payable to you and the loss payee named below as interests may appear at the time of the loss. |
|---|---|---|
| MT1 | 2015, TOYOTA TACOMA 4X4, 5TFLU4EN1FX136389 | **See Schedule of Loss Payees, if applicable** |

| Covered Auto No. | Territory — Town & State Where Covered Auto Will Be Principally Garaged | Purchased — Original Cost New | Actual Cost & New (N) Used (U) | Classification — Business Use S = Service R = Retail C = Commercial F = Farm |
|---|---|---|---|---|
| MT1 | BELGRADE MT, 105, | $ ███████   ACV | | S |

| Covered Auto No. | Radius of Operation | Size GVW, GCW or Vehicle Seating Capacity | Age Group | Primary Rating Factor Liab. | Primary Rating Factor Phys. Damage | Secondary Rating Factor | Code |
|---|---|---|---|---|---|---|---|
| MT1 | 50 | 5,450 | 8 | 1.00 | 1.00/1.00 | -.05 | 01183 |

---

**AU-DEC C/W 03 06**              **Page** 3

INSURED COPY

**Wolf 0019**

**Policy Number**
**B1J8265B**

### SCHEDULE OF COVERED AUTOS YOU OWN (Continued)

## AUSTIN MUTUAL INSURANCE COMPANY

Named Insured    WOLF CONSTRUCTORS INC

Effective Date: 04-19-22
12:01 A.M., Standard Time

Agent Name    GALLATIN INSURANCE AGENCY

Agent No.    251016

Coverages -- Premiums, Limits and Deductibles
(Absence of a deductible or limit entry in any column below means that the limit or deductible in the corresponding ITEM TWO column applies instead)

| Covered Auto No. | Liability | | P.I.P. | | Added P.I.P. |
|---|---|---|---|---|---|
| | Limit (In Thousands) | Premium | Limit Stated in each P.I.P. endt. minus ded. shown below | Premium | Limit Stated in each added P.I.P. endt. Premium |
| MT1 | $  1,000 | $ ▮▮▮ | | | |
| Total Prem. | | $ ▮▮▮ | | | |

| Covered Auto No. | Auto Medical Payments | | Medical Expense and Income Loss Benefits (Virginia Only) | |
|---|---|---|---|---|
| | Limit | Premium | Limit Stated In Each Medical Expense and Income Loss Endt. For Each Person | Premium |
| MT1 | $  5,000 | $ ▮▮▮ | | |
| Total Prem. | | $ ▮▮▮ | | |

| Covered Auto No. | Uninsured Motorists | | Underinsured Motorists | Property Protection (Michigan Only) | |
|---|---|---|---|---|---|
| | Limit (In Thousands) | Premium | Premium | Limit stated in P.P.I. Endt.minus deductible shown below | Premium |
| MT1 | $  1,000 | $ ▮▮▮ | $ ▮▮▮ | | |
| Total Prem. | | $ ▮▮▮ | $ ▮▮▮ | | |

| Covered Auto No. | Comprehensive | | Specified Causes of Loss | |
|---|---|---|---|---|
| | Limit stated in ITEM TWO minus deductible shown below | Premium | Limit stated in ITEM TWO minus deductible shown below | Premium |
| MT1 | $ 1,000  ACV | $ ▮▮▮ | | |
| Total Prem. | | $ ▮▮▮ | | |

| Covered Auto No. | Collision | | Towing and Labor | |
|---|---|---|---|---|
| | Limit stated in ITEM TWO minus deductible shown below | Premium | Limit per disablement | Premium |
| MT1 | $ 1,000  ACV | $ ▮▮▮ | | |
| Total Prem. | | $ ▮▮▮ | | |

**AU-DEC C/W 03 06**

**Page** 4

INSURED COPY

**Wolf 0020**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MONTANA CHANGES – CANCELLATION
# AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> AUTO DEALERS COVERAGE FORM
> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The **Cancellation** Common Policy Condition does not apply. The following condition applies instead:

**Ending This Policy**

**A. Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel the policy by mailing or delivering to us advance written notice of cancellation.

**2. Midterm Cancellation**

**a.** When this policy is in effect less than 60 days and is not a renewal or continuation policy, we may cancel for any reason. If we cancel for nonpayment of premium, we will mail at least 10 days' written notice to the first Named Insured. If we cancel for any other reason, we will mail at least 45 days' written notice to the first Named Insured.

**b.** When this policy is in effect 60 days or more or is a renewal or continuation policy, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium.

**(2)** If you are an individual and your driver's license or motor vehicle registration or that of a driver who lives with you and customarily uses the covered "auto" has been suspended or revoked during the policy period, or if the policy is a renewal, during its policy period or the 180 days immediately preceding its effective date.

If we cancel for nonpayment of premium, we will mail at least 10 days' written notice, stating the reason for cancellation, to the first Named Insured. If we cancel for any other reason, we will mail at least 45 days' written notice to the first Named Insured.

In this case, our notice will state that upon written request of the first Named Insured, mailed or delivered to us not less than 15 days prior to the effective date of cancellation, we will specify the reason for cancellation.

**3. Anniversary Cancellation**

If this policy has been written for a period of more than a year or without a fixed expiration date, we may cancel at the anniversary of its original effective date for any reason. If we cancel, we will mail you at least 45 days' written notice.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

However, when a financed insurance policy is cancelled, we will send any refund due to the premium finance company on a pro rata basis.

    © Insurance Services Office, Inc., 2012

INSURED COPY

**Wolf 0021**

**B. Nonrenewal**

1. If we decide not to renew or continue this policy, we will mail to the first Named Insured and agent, if any, notice at least 45 days before the end of the policy period. Our notice will state that upon written request of the first Named Insured, mailed or delivered to us not later than one month following the termination date of the policy, we will notify the first Named Insured in writing, within 15 days of the request of the reason or reasons for nonrenewal.

   If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to apply the required renewal or continuation premium when due shall mean that you have not accepted our offer.

2. If we fail to mail or deliver proper notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

We will mail or deliver our notice of cancellation or nonrenewal to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© Insurance Services Office, Inc., 2012

INSURED COPY

**Wolf 0022**

COMMERCIAL AUTO
CA 00 01 10 13

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5** | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

© Insurance Services Office, Inc., 2011

INSURED COPY

**Wolf 0023**

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|----|----|----|

**B. Owned Autos You Acquire After The Policy Begins**

**1.** If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

**2.** But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

**a.** We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

**b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

**1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

**2.** "Mobile equipment" while being carried or towed by a covered "auto".

**3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** "Loss"; or

**e.** Destruction.

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who Is An Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(1)** The owner or anyone else from whom you hire or borrow a covered "auto".

This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

© Insurance Services Office, Inc., 2011

INSURED COPY

**Wolf 0024**

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

**(1)** Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

© Insurance Services Office, Inc., 2011

INSURED COPY

**Wolf 0025**

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

    **(1)** Employment by the "insured"; or

    **(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

    **(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

    **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

    **(1)** When all of the work called for in your contract has been completed;

    **(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

    **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    © Insurance Services Office, Inc., 2011    CA 00 01 10 13

INSURED COPY

**Wolf 0026**

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

INSURED COPY

**Wolf 0027**

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

**A. Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   **(1)** The covered "auto's" collision with another object; or

   **(2)** The covered "auto's" overturn.

   **b. Specified Causes Of Loss Coverage**

   Caused by:

   **(1)** Fire, lightning or explosion;

   **(2)** Theft;

   **(3)** Windstorm, hail or earthquake;

   **(4)** Flood;

   **(5)** Mischief or vandalism; or

   **(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c. Collision Coverage**

   Caused by:

   **(1)** The covered "auto's" collision with another object; or

   **(2)** The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   **a.** Glass breakage;

   **b.** "Loss" caused by hitting a bird or animal; and

   **c.** "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   **a. Transportation Expenses**

   We will pay up to $20 per day, to a maximum of $600, for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   **b. Loss Of Use Expenses**

   For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

   **(1)** Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

   **(2)** Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

© Insurance Services Office, Inc., 2011

CA 00 01 10 13

INSURED COPY

**Wolf 0028**

(3) Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

## B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   (1) The explosion of any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   **b. War Or Military Action**

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" due and confined to:

   a. Wear and tear, freezing, mechanical or electrical breakdown.

   b. Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

4. We will not pay for "loss" to any of the following:

   a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   b. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

   c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   d. Any accessories used with the electronic equipment described in Paragraph **c.** above.

5. Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

   a. Permanently installed in or upon the covered "auto";

   b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

   c. An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

   d. Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

6. We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limits Of Insurance

1. The most we will pay for:

   a. "Loss" to any one covered "auto" is the lesser of:

   (1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

   (2) The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

   b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

   (1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

INSURED COPY

**Wolf 0029**

**(2)** Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

**(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment, you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

© Insurance Services Office, Inc., 2011

INSURED COPY

**Wolf 0030**

**4. Loss Payment – Physical Damage Coverages**

At our option, we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own; or

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

 © Insurance Services Office, Inc., 2011

INSURED COPY

**Wolf 0031**

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

    **(1)** The United States of America;

    **(2)** The territories and possessions of the United States of America;

    **(3)** Puerto Rico;

    **(4)** Canada; and

    **(5)** Anywhere in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

  **1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

  **2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

  **1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  **2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  **a.** That are, or that are contained in any property that is:

    **(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

    **(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

    **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

  **b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

  **c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

 © Insurance Services Office, Inc., 2011

INSURED COPY

**Wolf 0032**

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

    **(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

    **1.** A lease of premises;

    **2.** A sidetrack agreement;

    **3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

    **6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

    **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

    **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **2.** Vehicles maintained for use solely on or next to premises you own or rent;

    **3.** Vehicles that travel on crawler treads;

INSURED COPY

**Wolf 0033**

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **a.** Power cranes, shovels, loaders, diggers or drills; or

   **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph **1., 2., 3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   **b.** Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in Paragraph **1., 2., 3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **a.** Equipment designed primarily for:

      **(1)** Snow removal;

      **(2)** Road maintenance, but not construction or resurfacing; or

      **(3)** Street cleaning;

   **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

   **1.** Damages because of "bodily injury" or "property damage"; or

   **2.** A "covered pollution cost or expense";

   to which this insurance applies, are alleged.

   "Suit" includes:

   **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

INSURED COPY

**Wolf 0034**

COMMERCIAL AUTO
CA 23 84 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, is enclosed in quotation marks:

**1.** "Terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

**b.** When one or both of the following apply:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**2.** "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

**B.** Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

INSURED COPY

**Wolf 0035**

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **B.5.** and **B.6.** are exceeded.

With respect to this exclusion, Paragraphs **B.5.** and **B.6.** describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

C. With respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for any "loss", loss of use or rental reimbursement after "loss" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold in Paragraph **C.5.** is exceeded.

© Insurance Services Office, Inc., 2013

CA 23 84 10 13

INSURED COPY

**Wolf 0036**

With respect to this exclusion, Paragraph **C.5.** describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**D.** In the event of any incident of "terrorism" that is not subject to the exclusion in Paragraph **B.** or **C.,** coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

INSURED COPY

**Wolf 0037**

COMMERCIAL AUTO
CA 23 85 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, is enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   **a.** That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

   **b.** When one or both of the following apply:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

**B.** The following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**CA 23 85 10 13**  © Insurance Services Office, Inc., 2013  **Page 1 of 2**

INSURED COPY

**Wolf 0038**

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

**C.** In the event of any incident of "terrorism" that is not subject to this exclusion, coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

© Insurance Services Office, Inc., 2013

**CA 23 85 10 13**

INSURED COPY

**Wolf 0039**

POLICY NUMBER: B1J8265B

COMMERCIAL AUTO
CA 99 23 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RENTAL REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

**SCHEDULE**

| Coverage | Designation Or Description Of Covered "Autos" To Which This Insurance Applies | Maximum Payment Each Covered "Auto" | | | Premium |
|---|---|---|---|---|---|
| | | Any One Day | No. Of Days | Any One Period | |
| **Comprehensive** | MT 1<br>2015 TOYOTA<br>5TFLU4EN1FX136389 | $ 75 | 30 | $ 2,250 | $ ▮▮▮▮ |
| **Collision** | MT 1<br>2015 TOYOTA<br>5TFLU4EN1FX136389 | $ 75 | 30 | $ 2,250 | $ ▮▮▮▮ |
| **Specified Causes Of Loss** | | | | | |
| | | | | Total Premium | $ ▮▮▮▮ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

**A.** This endorsement provides only those coverages where a premium is shown in the Schedule. It applies only to a covered "auto" described or designated in the Schedule.

**B.** We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto". No deductibles apply to this coverage.

**C.** We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

**1.** The number of days reasonably required to repair or replace the covered "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered "auto" and return it to you.

CA 99 23 10 13

© Insurance Services Office, Inc., 2011

Page 1 of 2

INSURED COPY

**Wolf 0040**

2. The number of days shown in the Schedule.

**D.** Our payment is limited to the lesser of the following amounts:

1. Necessary and actual expenses incurred.

2. The maximum payment stated in the Schedule applicable to "any one day" or "any one period".

**E.** This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

**F.** If "loss" results from the total theft of a covered "auto" of the private passenger type, we will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under the Physical Damage Coverage Extension.

INSURED COPY

**Wolf 0041**

POLICY NUMBER: B1J8265B                                    **COMMERCIAL AUTO**
                                                          **CA 31 33 06 17**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MONTANA UNDERINSURED MOTORISTS COVERAGE – NONSTACKED

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Montana, this endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| |
|---|
| **Named Insured:**   Wolf Constructors Inc |
| **Endorsement Effective Date:**   04/19/2022 |

### SCHEDULE

| | |
|---|---|
| **Limit Of Insurance:**  $1,000,000 | **Each "Accident"** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

  **1.** We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle".

  **2.** We will pay under this coverage only if Paragraph **a.** or **b.** below applies:

    **a.** The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or

    **b.** A tentative settlement has been made between an "insured" and the insurer of an "underinsured motor vehicle" and we:

      **(1)** Have been given prompt written notice of such tentative settlement; and

      **(2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

  **3.** Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**CA 31 33 06 17**                 © Insurance Services Office, Inc., 2016                 **Page 1 of 3**

INSURED COPY

**Wolf 0042**

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

**1.** An individual, then the following are "insureds":

**a.** The Named Insured and any "family members".

**b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

**a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**C. Exclusions**

This insurance does not apply to any of the following:

**1.** Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of an "underinsured motor vehicle", in accordance with the procedure described in Paragraph **A.2.b.**

**2.** Punitive or exemplary damages.

**3.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**4.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**5.** With respect to damages resulting from an "accident" with an "underinsured motor vehicle", "bodily injury" sustained by:

**a.** An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form;

**b.** Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form; or

**c.** Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

**6.** "Bodily injury" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Underinsured Motorists Coverage shown in the Schedule or Declarations.

**2.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form or Medical Payments Coverage endorsement attached to this Coverage Part.

We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

© Insurance Services Office, Inc., 2016

CA 31 33 06 17

INSURED COPY

**Wolf 0043**

**E. Changes In Conditions**

The Conditions are changed for Underinsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are changed by addition of the following:

   a. Reference to "other collectible insurance" applies only to other collectible underinsured motorists insurance.

   b. Any insurance we provide with respect to a vehicle owned by the Named Insured or, if the Named Insured is an individual, any "family member", that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form, shall be excess over any other collectible underinsured motorists insurance providing coverage on a primary basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved; and

   b. Promptly send us copies of the legal papers if a "suit" is brought.

   c. A person seeking coverage from an insurer, owner or operator of an "underinsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer and allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such vehicle.

3. **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights do not apply under this provision with respect to damages caused by an "accident" with an "underinsured motor vehicle" if we:

   a. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle described in the definition of "underinsured motor vehicle"; and

   b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

   a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

   b. We also have a right to recover the advance payment.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Underinsured motor vehicle" means a land motor vehicle or "trailer" to which a liability bond or policy applies at the time of an "accident", but the amount paid under that bond or policy to the "insured" is not enough to pay the full amount the insured is legally entitled to recover as damages.

   However, "underinsured motor vehicle" does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

   b. Owned by a governmental unit or agency; or

   c. Designed for use mainly off public roads while not on public roads.

POLICY NUMBER: B1J8265B

**COMMERCIAL AUTO**
**CA 31 35 06 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MONTANA UNINSURED MOTORISTS COVERAGE – NONSTACKED

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Montana, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| |
|---|
| **Named Insured:**   Wolf Constructors Inc |
| **Endorsement Effective Date:**   04/19/2022 |

**SCHEDULE**

| |
|---|
| **Limit Of Insurance:**  $1,000,000                                    Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**CA 31 35 06 17**                 © Insurance Services Office, Inc., 2016                 **Page 1 of 3**

INSURED COPY

**Wolf 0045**

## C. Exclusions

This insurance does not apply to any of the following:

**1.** Punitive or exemplary damages.

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**3.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**4.** "Bodily injury" arising directly or indirectly out of:

    **a.** War, including undeclared or civil war;

    **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

**2.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form or Medical Payments Coverage endorsement attached to this Coverage Part.

We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

## E. Changes In Conditions

The Conditions are changed for Uninsured Motorists Coverage as follows:

**1.** **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are changed by addition of the following:

    **a.** Reference to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

    **b.** Any insurance we provide with respect to a vehicle owned by the Named Insured or, if the Named Insured is an individual, any "family member", that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form, shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

**2.** **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

    **a.** Promptly notify the police if a hit-and-run driver is involved; and

    **b.** Promptly send us copies of the legal papers if a "suit" is brought.

**3.** **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

© Insurance Services Office, Inc., 2016

CA 31 35 06 17

INSURED COPY

**Wolf 0046**

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   **a.** For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

   **b.** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   **c.** That is a hit-and-run vehicle and neither the driver nor owner can be identified.

   The vehicle must either:

   **(1)** Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

   **(2)** Cause "bodily injury" with no physical contact with an "insured", a covered "auto" or a vehicle an "insured" is "occupying" at the time of the "accident", provided the facts of the "accident" can be corroborated by competent evidence which may include the testimony, under oath, of any person having a claim under this or any similar insurance as the result of such "accident".

However, "uninsured motor vehicle" does not include any vehicle:

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

**b.** Owned by a governmental unit or agency; or

**c.** Designed for use mainly off public roads while not on public roads.

© Insurance Services Office, Inc., 2016

INSURED COPY

**Wolf 0047**

COMMERCIAL AUTO
CA 01 72 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MONTANA MEDICAL PAYMENTS COVERAGE – REMOVAL OF REASONABLE EXPENSES LIMITATION

This endorsement modifies insurance provided under the following:

> AUTO DEALERS COVERAGE FORM
> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Changes In Auto Medical Payments Coverage**

**1.** If the Auto Medical Payments Coverage endorsement is attached, then Paragraph **A. Coverage** is replaced by the following:

**A. Coverage**

We will pay expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred for services rendered within three years from the date of the "accident".

**2. Changes In Locations And Operations Medical Payments**

With respect to the Auto Dealers Coverage Form, Paragraph **C.1.c.** of **Section II – General Liability Coverages** is replaced by the following:

**c.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay expenses for:

**(1)** First aid administered at the time of an "accident";

**(2)** Necessary medical, surgical, diagnostic imaging and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

---

**CA 01 72 10 13**               © Insurance Services Office, Inc., 2012               **Page 1 of 1**

INSURED COPY

**Wolf 0048**

COMMERCIAL AUTO
CA 99 03 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

> AUTO DEALERS COVERAGE FORM
> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Coverage

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

## B. Who Is An Insured

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

## C. Exclusions

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

© Insurance Services Office, Inc., 2011

INSURED COPY

**Wolf 0049**

**7.** "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**8.** "Bodily Injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

**D. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**E. Changes In Conditions**

The **Conditions** are changed for **Auto Medical Payments Coverage** as follows:

**1.** The **Transfer Of Rights Of Recovery Against Others To Us** Condition does not apply.

**2.** The reference in **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

© Insurance Services Office, Inc., 2011

CA 99 03 10 13

INSURED COPY

**Wolf 0050**